# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**  )
                                )
        **Plaintiff,** )
                                )
**v.**                           )
                                )    Case No. 18-20030-01/02-CM
**ORLANDO CORTEZ-NIETO and**     )
**JESUS CERVANTES-AGUILAR,**     )
                                )
        **Defendant.** )
                                )

## MEMORANDUM AND ORDER

This matter is before the court on defendant Orlando Cortez-Nieto's motion for judgment of acquittal (Doc. 129) and defendant Jesus Cervantes-Aguilar's motion for judgment of acquittal or, in the alternative, for a new trial (Doc. 128.) A jury found that both defendants did knowingly and intentionally:

(1) conspire to manufacture more than 50 grams of methamphetamine within 1,000 feet of Klamm Park, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 846 and 860(a);
(2) manufacture and attempt to manufacture of 50 grams or more of methamphetamine within 1,000 feet of Klamm Park, in violation of §§ 841(a)(1), 841(b)(1)(a)(viii), 846 and 860(a);
(3) possess with intent to distribute 50 grams or more of methamphetamine within 1,000 feet of Klamm Park, in violation of §§ 841(a)(1), 841(b)(1)(A)(viii) and 860(a); and
(4) open, use and maintain a place, located at 2739 Cleveland Ave. Kansas City, Kansas, for the purpose of manufacturing methamphetamine within 1,000 feet of Klamm Park, in violation of §§ 856(a)(1) and 860(a).

Defendants maintain that there was insufficient evidence in the record to convict them of the charged crimes. Specifically, defendants primarily argue that the government failed to prove that they committed the charged crimes within 1,000 feet of Klamm Park. The court agrees, and grants defendants' motions for judgment of acquittal on each charge. But because the evidence is sufficient to support the lesser

included offenses of § 841(a)(1), § 846, and § 856(a)(1), the court enters convictions against each defendant on those lesser included offenses.

## I. Legal Standards

### A. Motion for Judgment of Acquittal

Under Federal Rule of Criminal Procedure 29(c)(2), if a jury has returned a guilty verdict, "the court may set aside the verdict and enter an acquittal." When deciding whether to grant a motion for judgment of acquittal, a court must "view the evidence in the light most favorable to the government and then determine whether there is sufficient evidence from which a jury might properly find the accused guilty beyond a reasonable doubt." *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982). In doing this, the court may not consider the weight of the evidence or the credibility of witnesses. *Burks v. United States*, 437 U.S. 1, 16 (1978). If the government has sufficiently established each element of the crime, the court must defer to the jury's guilty verdict. *See White*, 673 F.2d at 302 (noting, "[t]his standard reflects a deep respect for the fact-finding function of the jury.") "When ruling on a motion for judgment of acquittal, a district court should consider not only whether the evidence would be sufficient to sustain a conviction of the offense charged, but also whether it would be sufficient to sustain a conviction on a lesser included offense." *United States v. Wood*, 207 F.3d 1222, 1229 (10th Cir. 2000).

### B. Motion for a New Trial

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "A motion for new trial is not regarded with favor and is only issued with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269–70 (citing *United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir. 1998)). Whether to grant a new trial is usually left to the trial court's discretion and is reviewed for abuse of discretion. *Id.* at 1270.

## II. Discussion

Defendants offer four distinct arguments, two of which are brought by both defendants. Both defendants claim that there was insufficient evidence to find that (1) they committed these crimes within 1,000 feet of a playground, as required for all Counts, and (2) "use[d]" a place for the purpose of manufacturing meth, as required for Count 4. Individually, defendant Cortez-Nieto claims there was insufficient evidence of his knowledge for each Count, as well as his possession and manufacture of the methamphetamine. And defendant Cervantes-Aguilar individually claims the court used improper instructions for deliberate ignorance and constructive possession.

The court examines each argument below. For ease of reference, the court recounts all evidence that the government cites in support of the jury verdict prior to examining the sufficiency of that evidence.

### A. Within 1,000 Feet of a Playground

#### 1. Government's Evidence

In this case, the government largely relied on the testimony of DEA Special Agent Joe Geraci to establish that the distance between 2739 Cleveland and Klamm Park is less than 1,000 feet. Agent Geraci testified that he used a measuring wheel from the Klamm Park sign, located six to ten feet inside the park boundary, to 2739 Cleveland's driveway. This measurement resulted in a distance of 942 feet. Agent Geraci testified that a portion of his measurement included an incline, which made the distance longer. Photos of the 2739 Cleveland house and driveway were admitted into evidence. (Gov't. Ex. 2, 3, 13 and 33.) These exhibits also show the location of the drug-related activity within the house. Methamphetamine was found in the kitchen, which is connected to the garage, as well as the room adjacent to the kitchen. (Gov't Ex. 13, 102.) Further, pictures show that manufacture of methamphetamine occurred in the basement. (Gov't Ex. 20–31.)

In addition, the government offered a Google Map overview of 2739 Cleveland in relation to Klamm Park. (Gov't Ex. 201.) The exhibit included a calculation by the Google Maps software that the straight-line distance between 2739 Cleveland and Klamm Park is 602 feet. (*Id.*) But the government explicitly did not offer this exhibit for the purpose of establishing distance. (Doc. 132, at 4.) Rather, the government offered it to show the two locations in relation to each other. (*Id.*)

### 2. Sufficiency

No reasonable jury could have concluded that the government proved beyond a reasonable doubt that defendants committed the charged crimes within 1,000 feet of Klamm Park. Title 21 U.S.C. § 860(a) provides that anyone who violates § 841(a)(1) or § 856 within 1,000 feet of a playground (as well as other protected sites) is subject to heightened penalties. The Tenth Circuit has not yet adopted rules governing distance measurement under 21 U.S.C § 860(a). Other circuits, however, have considered the issue.

There is broad consensus that distance is properly measured in a straight line or "as the crow flies." *United States v. Soler*, 275 F.3d 146, 155 n.6 (1st Cir. 2002); *see United States v. Henderson*, 320 F.3d 92, 103 (1st Cir. 2003); *United States v. Clavis*, 956 F.2d 1079, 1088 (11th Cir. 1992); *United States v. Watson*, 887 F.2d 980, 980–81 (9th Cir. 1989); *United States v. Ofarril*, 779 F.2d 791, 792 (2d Cir. 1985). But if the government does not offer evidence of the straight-line distance, it must rest its case on the measurement that it did offer. *See United States v. Applewhite*, 72 F.3d 140, 143 (D.C. Cir. 1995) ("[T]here is no evidence in the record here from which the jury could have derived the shorter straight-line distance. The Government's case must therefore stand or fall upon the adequacy of the 920.2 foot measurement as proof that the appellants possessed the drugs within 1,000 feet of the school.").

Further, the distance is properly measured from the protected site to the location *within* the building where the drug-related activity occurred. *Soler*, 275 F.3d at 154; *United States v. Johnson*, 46

-4-

F.3d 1166, 1169–70 (D.C. Cir. 1995). If the government does not offer a measurement to the location of the drug activity within the building but instead offers some other measurement (such as one to the property line or the entrance of the building), there are two possible consequences. If the "spatial leeway" is large (i.e. the government's measurement leaves ample cushion to ensure the distance is less than 1,000 feet), "common sense, common knowledge, and rough indices of distance can carry the day." *Soler*, 275 F.3d at 154. For instance, in *United States v. Glover*, the government's 674-foot measurement from the school to the front of a store was sufficient for a reasonable jury, using "common sense," to conclude the spatial leeway between the storefront and the basement—the actual site of the drug activity—would not put the measurement over 1,000 feet. 153 F.3d 749, 756 (D.C. Cir. 1998); *see also United States v. Harrison*, 103 F.3d 986, 990 (D.C. Cir. 1997); *United States v. Baylor*, 97 F.3d 542, 546 (D.C. Cir. 1996). But if the spatial leeway is modest, "personal liberty is at stake, [and] courts must examine the government's proof with a more critical eye." *Soler*, 275 F.3d at 154. Specifically, the evidence must be such that a reasonable jury could find beyond a reasonable doubt that the omitted distance was less than the remaining balance of the 1,000 feet. *See Soler*, 275 F.3d at 155. There is no bright line rule for what distance is only modest spatial leeway, but courts have treated various distances under 100 feet as modest. *See, e.g.*, *Soler*, 275 F.3d at 154 (37 feet); *Applewhite*, 72 F.3d at 143–44 (79.8 feet).

The government did not offer evidence of the distance "as the crow flies." It therefore must rest its case on the measurement it did offer. Viewing the evidence in the light most favorable to the government and therefore crediting the ten feet that Agent Geraci included inside the boundary of Klamm Park, the distance to the 2739 Cleveland driveway measured 932 feet. This leaves a spatial leeway of 68 feet, which, when compared to the distances cited above, qualifies as "modest." The government's evidence must therefore be sufficient for a reasonable jury to conclude beyond a

-5-

reasonable doubt that the actual distance between the end of the 2739 Cleveland driveway and the location of the drug-related activity—the kitchen, adjacent room and basement—is less than 68 feet.

No reasonable jury could have so concluded based on the government's evidence. All that the government offers to close the spatial gap between the end of the driveway and the kitchen, adjacent room, and basement are photographs of those various locations. The court notes at the outset that "[d]istances are notoriously difficult to gauge in still photographs." *Soler*, 275 F.3d at 155. Additionally, the pictures that the government offers are uniquely unsuited to the task of measuring distance. The driveway picture does not show end of the driveway, which is a crucial piece of the puzzle given that the government's measurement stopped there. These pictures also make it difficult to determine the spatial relationship between the rooms. For example, although the government notes that the kitchen is directly adjacent to the garage, the pictures are not clear enough for a jury to determine the length from the garage door to the kitchen entrance. Accordingly, no reasonable jury could have concluded, based on this evidence, that the distance between the end of government's measurement and the site of the drug-related activity was less than 68 feet. As the indictment lists a combination of statutes in each count and an element of each offense was not proven, defendants' convictions as to each count must be vacated. *See United States v. Smith*, 13 F.3d 380, 383 (10th Cir. 1993)

This, however, is not the end of the inquiry. As noted above, on a motion for judgment of acquittal, the court must consider whether the evidence, though insufficient to sustain the charged offense, is sufficient to sustain a conviction on a lesser included offense. *Wood*, 207 F.3d at 1229. The Tenth Circuit has enumerated a four-part test for determining whether a conviction should be entered on a lesser included offense:

> It must be clear (1) that the evidence adduced at trial fails to support one or more elements of the crime of which appellant was convicted, (2) that such evidence sufficiently sustains all the elements of another offense, (3) that the latter is a lesser included offense of the former, and (4) that no undue prejudice will result to the accused.

*Smith*, 13 F.3d at 383 (citing *Allison v. United States*, 409 F.2d 445, 451 (D.C. Cir. 1969)). If each element of the *Allison* test is satisfied, the court should enter a conviction on the lesser included offense even if no lesser included offense instruction was given at trial. *See, e.g.*, *Smith*, 13 F.3d at 383; *United States v. Duran*, 141 F.3d 1186 (10th Cir. 1998). The court notes that this is a test by which appellate courts determine whether to exercise their authority under 28 U.S.C. § 2106, but other circuits have held that the same test applies when a trial court is considering whether to enter a conviction on a lesser included offense. *See Gov't of the V.I. v. Josiah*, 641 F.2d 1103, 1108 (3d Cir. 1981) (citations omitted). Further, at least one District of Kansas judge has used the *Allison* test in this manner. *See*, *e.g., United States v. Guerra-Javalera*, No. CRIMA03-20054-02KHV, 2006 WL 3772315, at *4 (D. Kan. Dec. 20, 2006).

The first and third elements of the *Allison* test are satisfied. As shown above, the government did not prove that defendants committed the charged crimes within 1,000 feet of Klamm Park. Additionally, the Tenth Circuit has held that § 841(a) is a lesser included offense of § 860(a). *United States v. Ashley*, 26 F.3d 1008, 1011 (10th Cir. 1994). Sections 846 and 856 are also lesser included offenses of § 860(a) because the elements required to prove a violation of those statutes are a subset of the elements of § 860(a). *See Carter v. United States*, 530 U.S. 255, 260 (2000). Section 860(a) simply adds one element to the charged offenses: the crimes must be committed within 1,000 feet of a protected site.

As to the fourth element, "defendant suffers no prejudice by entry of a conviction on a lesser included offense if the instructions given to the jury actually contained the elements of that offense and the jury necessarily had to find each of those elements beyond a reasonable doubt." *United States v. Duran*, 141 F.3d 1186 (10th Cir. 1998). Such is the case here. For each count, the instructions contained the 1,000 feet requirement *in addition to* the elements of each underlying offense under § 841(a)(1), §

846 and § 856(a)(1). Defendants, therefore, suffer no undue prejudice. Defendants vigorously dispute the remaining (second) element of the *Allison* test; that the evidence presented at trial sufficiently sustains all elements of the lesser included offenses. The court addresses each of their arguments below and finds that the evidence supports convictions on the lesser included offenses of § 841(a)(1), § 846, and § 856(a)(1).

### B. "Use" in 21 U.S.C § 856(a)(1)

In attacking the sufficiency of evidence, defendants first argue that the government's evidence did not show that defendants "use[d]" 2739 Cleveland for the purpose of manufacturing methamphetamine as required by § 856(a)(1). They argue, citing various canons of construction, that the word "use" in the statute must be read to require that defendants exercised some degree of control over the property. (Doc. 129, at 10.) Defendants' argument is unpersuasive. Such a reading of § 856(a)(1) is contrary to the well-established law of this circuit.

#### 1. Government's Evidence

The government cites numerous exhibits in support of its proposition that there was sufficient evidence for a reasonable jury to conclude that defendants maintained and used 2739 Cleveland for the purpose of manufacturing methamphetamine. Investigators found various articles that defendants purchased from nearby stores, as confirmed by video surveillance, inside 2739 Cleveland. For instance, a plastic box with a bright green lid, a camouflage coat, and a camouflage knife were all found inside 2739 Cleveland. (Gov't Ex. 120j, 31, 49, 53.) Additionally, investigators found within 2739 Cleveland a package addressed to defendant Cortez-Nieto at that address. (Gov't Ex. 103.) Defendant Cervantes-Aguilar listed 2739 Cleveland as his address for a money transfer to Mexico, as shown by a receipt found in 2739 Cleveland. (Gov't Ex. 205.) Finally, investigators found a blue ledger in 2739 Cleveland that,

according to the government, documents the participation of both defendants in the manufacture of methamphetamine at 2739 Cleveland. (Gov't Ex. 197.)

### 2. Sufficiency

This evidence was sufficient for a reasonable jury to conclude beyond a reasonable doubt that defendants used 2739 Cleveland for the purpose of manufacturing methamphetamine. In order to convict a defendant under § 856(a)(1), the government is required to prove defendant "(1) knowingly (2) opened or maintained a place (3) for the purpose of manufacturing by repackaging, distributing, or using any controlled substance." *United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007) (quoting *United States v. Verners*, 53 F.3d 291, 295 (10th Cir. 1995)). To prove that defendant used or maintained a residence, the government must establish that defendant had a "substantial connection" to the home rather than just being a "casual visitor." *Verners*, 53 F.3d at 296 (quoting *United States v. Williams*, 923 F.2d 1397, 1403 (10th Cir. 1990)). The Tenth Circuit has enumerated the following non-exhaustive list of factors that might establish that defendant had a "substantial connection" to the residence:

> Acts evidencing such matters as control, duration, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting, supplying the food to those at the site, and continuity are, of course, evidence of knowingly maintaining the place considered alone or in combination with evidence of distributing from that place.

*Id*.

Contrary to defendants' argument that "use" in § 856(a)(1) requires proof that they exercised some degree of control over 2739 Cleveland, control is but one of many factors that the government could use to establish that defendants had a "substantial connection" to the house. Viewed through this lens, a reasonable jury could have concluded that defendants had a substantial connection to 2739 Cleveland. Based on the mail addressed to defendant Cortez-Nieto at that address and defendant Cervantes-Aguilar's choice to list 2739 Cleveland as his address on a money transfer, the jury could reasonably infer that both defendants elected to receive mail at that address. This alone likely establishes

a substantial connection to the residence; receiving mail at an address is a strong indicator of continued presence at the address and perhaps even some degree of control over the site. Further, the jury could reasonably infer that defendants furnished the house, another possible avenue of showing "substantial connection," from the fact that several items that defendants purchased were found in the house. The court finds sufficient evidence for a reasonable jury to conclude that defendants used and maintained 2739 Cleveland as required by § 856(a)(1).

### C. Defendant Cortez-Nieto's Knowledge

Defendant Cortez-Nieto argues that the government's evidence of his knowledge of the crimes is nothing more than "stacking inferences upon inferences." Finding the government's evidence was not nearly so attenuated, the court concludes there was sufficient evidence for a reasonable jury to find defendant Cortez-Nieto had the requisite knowledge for the charged crimes.

#### 1. Government's Evidence

In support of the jury verdict that defendant Cortez-Nieto had the requisite knowledge, the government cites the testimony of Victor Suarez. Suarez was arrested for his own part in the drug trade at issue in the instant case and testified as a witness for the government. According to Suarez, defendant Cortez-Nieto was the "cook" of the methamphetamine and defendant Cervantes-Aguilar was the distributor. The government also notes that this testimony is corroborated by entries in the blue ledger recovered from 2739 Cleveland. For instance, "Chongo," Suarez's nickname, appears in the ledger as giving $500 and $1000, which corroborates Suarez's testimony that he gave those amounts to defendant Cervantes-Aguilar.

#### 2. Sufficiency

Viewing this evidence in the light most favorable to the government, the court finds that a reasonable jury could have concluded that defendant Cortez-Nieto had the requisite knowledge for the

charged crimes. The jury was entitled to believe Suarez's testimony that Cortez-Nieto was the methamphetamine cook. Such a position would necessarily give Cortez-Nieto the requisite knowledge. Though this testimony was uncorroborated, a conviction may still be based on it so long as the jury is properly instructed to weigh the uncorroborated testimony with great care. *See United States v. Hill*, 627 F.2d 1052, 1053 (10th Cir. 1980). The jury was so instructed in this case. (Doc. 123, at 9.) On a motion for judgment of acquittal, this court will not re-weigh the evidence or credibility of a witness. *Burks*, 437 U.S. at 16 (1978). Accordingly, there was sufficient evidence of defendant Cortez-Nieto's knowledge.

Defendant Cortez-Nieto also offers a conclusory statement that there was insufficient evidence of his actual or constructive possession or manufacture of methamphetamine. The court finds that there was sufficient evidence for a jury to find those elements beyond a reasonable doubt.

### D. Improper Jury Instructions on Deliberate Ignorance and Constructive Possession

Defendant Cervantes-Aguilar argues that the jury instructions on deliberate ignorance and constructive possession were flawed. As to the deliberate ignorance instruction, defendant argues that because the government offered no evidence that he purposely contrived to prevent any other person from learning the facts, a deliberate ignorance instruction was inappropriate. As to the constructive possession instruction, defendant argues that it failed to inform the jury that constructive possession requires that defendant have the intent to exercise control over the object. The court finds both arguments unpersuasive.

Defendant's arguments are based on either a misreading of the applicable law or a misunderstanding of what the relevant jury instruction contains. Deliberate ignorance does not require that defendant purposely contrived to prevent *another person* from learning all the facts, but rather that defendant purposely contrived to prevent *himself* from learning all the facts. *United States v. Delreal-*

-11-

*Ordones*, 213 F.3d 1263, 1268 (10th Cir. 2000). Similarly, defendant's argument against the constructive possession instruction ignores the fact that the instruction required the jury to find that defendant had "power and intent to exercise control over the object." (Doc. 123, at 29.) Jury instructions 22 and 23 (Doc. 123, at 28–29) are accurate statements of the law.

### III. Conclusion

The evidence presented at trial is insufficient for a reasonable jury to conclude beyond a reasonable doubt that the defendants committed the charged crimes within 1,000 feet of Klamm Park. However, the evidence is sufficient to support the lesser included offenses of 21 U.S.C. §§ 841(a)(1), 846, and 856(a).

**IT IS THEREFORE ORDERED** that defendants' individual motions for judgment of acquittal (Docs. 128 and 129) are granted as to each Count. The jury verdict is vacated, but the court enters a conviction against defendants Cortez-Nieto and Cervantes-Aguilar on the following lesser included offenses:

(1) conspiracy to manufacture more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846;
(2) manufacture and attempt to manufacture of 50 grams or more of methamphetamine, in violation of §§ 841(a)(1), 841(b)(1)(a)(viii), and 846;
(3) possession with intent to distribute 50 grams or more of methamphetamine, in violation of §§ 841(a)(1), 841(b)(1)(A)(viii) and;
(4) opening, using and maintaining a place, located at 2739 Cleveland Ave. Kansas City, Kansas, for the purpose of manufacturing methamphetamine, in violation of §§ 856(a)(1).

Dated this 27th day of November, 2019, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**